## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| **MANITOU ISLAND TRANSIT, LLC**   Plaintiff,  v.  **THE UNITED STATES**   Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 25-218 C<br>)   _____<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT

Plaintiff, Manitou Island Transit, LLC ("MIT"), through undersigned counsel, for its complaint against the United States of America seeking, *inter alia*, damages and declaratory relief, alleges:

### INTRODUCTION

1. MIT, a one-hundred-year-old family business providing ferry services to the North and South Manitou Islands ("Islands") on Lake Michigan, once again comes before this Court facing permanent closure as a result of the National Park Service's ("NPS") breach and clear and unqualified repudiation of its obligations under *both* the parties' Concessions Contract (the "Contract"), *and* this Court's October 23, 2023 Order granting MIT's Motion for Summary Judgment and its interpretation of the terms of the parties' Contract in the parties' prior lawsuit in this Court, *Manitou Island Transit, LLC v. United States*, No. 1:21-cv-00953-TMD, that NPS is *required* to maintain the Islands docks "in a condition that ensures access by MIT's ferries for the duration of the seasonal operating schedule." *See* Exhibit A (the "Order"), ECF No. 48 at 11.

2. The Contract, effective through March 15, 2029, expressly conveys MIT rights to ferry passengers to the Islands and, by its terms and the Order, imposes a duty upon NPS to maintain the docks on the Islands in a condition that ensures access by MIT's ferries.

3. While the Order and the Lawsuit – never appealed by NPS – inevitably led to the parties to resolve the matter in exchange for payment of MIT's damages, in the very next summer season following entry of the Order, NPS again failed to render the dock on North Manitou Island accessible to MIT for the 2024 ferry season. Then, by correspondence dated October 24, 2024, stated a clear and unqualified refusal to render North Manitou Island accessible to MIT in 2025, and South Manitou Island accessible to MIT in 2026 because NPS chose to schedule construction contracts that will interfere with MIT's rights of access.

4. NPS's failure to perform in the 2024 season, in violation of the terms of the Order and, again, in breach of the Contract, along with its clear intent to do the same in subsequent years – if MIT's business can even survive – constitutes a total breach of the Contract entitling MIT to consequential damages for the 2024 season *and* the duration of the Contract, as well as such other and further relief as this Court may order against NPS for its clear, unfounded decision to violate the terms of this Court's Order.

5. NPS's repeated breach and total repudiation of its contractual obligations have pushed this family business – servicing the Islands for four generations of family members since 1917 – to the brink of insolvency. As a result of NPS's total repudiation of the contract through the balance of its term, MIT will likely be forced to cease its operations and incur substantial losses and damages.

6. This lawsuit seeks: recovery of MIT's reasonable damages for the 2024 season, and its reasonable and foreseeable damages caused by NPS's unexcused failure and stated,

unequivocal intent to continue breaching its obligations under the Contract and the terms of this Court's Order through the remaining term of the Contract; and/or entry of an Order compelling NPS to perform under the Contract and remedy the continuing inaccessibility of the Islands; and/or entry of such further damages and relief, in law and equity, as this Court deems just and proper. The facts, as alleged below, and settled principles of law, including, *inter alia*, the doctrine of *res judicata* entitle MIT to such relief.

## JURISDICTION AND VENUE

7. The United States Court of Federal Claims has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2), since the claims total greater than $10,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the material facts giving rise to this dispute, the Islands, the principal place of business of MIT, and the jurisdiction of NPS and location of its personnel responsible for performing under the Contract are all within this judicial district.

9. This contract dispute is not governed by 41 U.S.C. 601 *et seq.* (the Contract Disputes Act), because the Contract Disputes Act does not include concession contracts. *See* 36 C.F.R. § 51.3.

## PARTIES

10. Manitou Island Transit, LLC is a family-owned Michigan corporation with its principal place of business in Leland, Michigan.

11. The United States of America is the party to the Contract acting by and through the authority lawfully conveyed to and vested in the NPS. The Midwest Region of the NPS includes the Sleeping Bear Dunes National Lakeshore ("SLBE"), which encompasses the Islands.

# FACTS

12. MIT is a family-owned and operated ferry business in Leland, Michigan, which was established in 1917 as a mail-carrying service to the Islands and later transformed into a passenger ferry. MIT ran commercial ferry services to and from the Islands for decades. In the 1970's, the United States Government, through the NPS, made the Islands part of the SLBE, exercising eminent domain over MIT's property and docks located on and servicing the Islands. At that time, and since, MIT has entered into an uninterrupted sequence of Concessions Contracts with NPS to run seasonal daytrips and overnight camping trips taking the public to the Islands. The ferry boat, the fabled Mishe-Mokwa, is generally booked long in advance and navigates the waters of Lake Michigan to safely transport groups of 114 passengers to and from the Islands.

13. Given the weather and related conditions on Lake Michigan, MIT's business is primarily seasonal. Its business operations rely almost exclusively on running daily throughout the entire Memorial Day through Labor Day season, and weather permitting, several days in early May and through late October.

14. On or about March 20, 2019, following a long, uninterrupted string of 10-year concession contracts, the Contract was executed by MIT and the Acting Regional Director of the NPS to once again extend MIT's rights to ferry passengers to the Islands. The Contract was effective as of March 15, 2019, and remains effective through March 15, 2029. A copy of the Contract is attached as Exhibit B.

15. Since the exercise of eminent domain some 40 years ago by the federal government and prior to 2020, NPS maintained the Island's docks, timely dredged passageways, and performed all other services to the federal property, identified in the Contract as the "Area,"

so that MIT could timely and fully perform its obligations and continue ferry operations to the Islands as it has done for approximately 100 years. Under the Contract, it is made clear that MIT does not own, control, or have the right or obligation to maintain the Area and docks on and around the Islands. The Contract requires NPS to perform these obligations, and MIT relies on that contractual obligation in preparing and performing its obligations under the Contract.

16. Due to its status as a Category III Concession Contract, MIT is not permitted to construct any capital improvements within the National Park lands, which include the Islands. *See* Exhibit 1 at § 2 (e). As such, MIT is entirely dependent upon NPS to timely and properly perform its obligations under the Contract to maintain the NPS's facilities and docks, including dredging and physical repairs. Without such performance by NPS, MIT is rendered wholly unable to ferry passengers to the Islands in accordance with its rights under the Contract.

**NPS Failed to Maintain the Islands Docks to Permit Access by MIT During the 2020 and 2023 Ferry Seasons**

17. On October 26, 2023, in an Opinion and Order, this Court granted MIT's motion for summary judgment on its breach of contract claim against NPS finding that the "Contract imposes an obligation on the NPS to maintain the docks on the Islands in a condition that ensures access by MIT's ferries for the duration of the seasonal operating schedule." *Manitou Island Transit, LLC v. United States*, 168 Fed. Cl. 218, 227 (2023). This Court further found that the government cannot insulate itself "from liability for its own breach of contract." *Id*.

18. Notwithstanding this Court's October 26, 2023, ruling clearly establishing NPS's obligations and duties under the Contract, NPS once again failed to render North Manitou Island accessible to MIT for the 2024 ferry season.

**NPS Failed to Render North Manitou Island Accessible to MIT for the 2024 Ferry Season**

19. MIT incurs substantial expenses in preparation to perform under the Contract because, among other things, it must regularly maintain the Mishe-Mokwa, its Leland docks, parking facilities, insurance policies, and other equipment and property required to service thousands of passengers in compliance with extensive safety standards.

20. In February 2024, the NPS assured MIT that a floating dock, as recommended by MIT's captains for safe access by its ferries, would be installed on North Manitou Island prior to the start of the 2024 ferry season.

21. On April 1, 2024, the NPS informed MIT that a contract was executed to install a temporary dock on North Manitou Island by May 1, 2024.

22. On May 7, 2024, the NPS notified MIT that the dock at North Manitou Island "is a continually evolving situation" and provided June 4, 2024, as a new estimated completion date for the temporary dock installation.

23. The North Manitou Island dock was not completed by June 4, 2024.

24. Upon information and belief, on June 13, 2024, NPS employees informed callers and visitors to the SLBE that MIT would not be running to North Manitou Island for the entirety of the 2024 ferry season.

25. On or about June 21, 2024, well past MIT's scheduled May 1, 2024, start date for ferry transports, the NPS installed a pile-driven dock extension (rather than the previously discussed floating dock) on North Manitou Island.


04/05/2012 Google Earth Image Depicting "T" Piling Break Wall Before Sand Buildup


03/01/24 Google Earth Image Depicting Sand Buildup Around "T" Piling Break Wall Before Extension

26. NPS contractors built the new dock by adding an extension to the existing "T" piling break wall, which is completely unprotected from wind and waves on the northeast side of North Manitou Island that continuously cause the buildup of sand around the dock and otherwise affect the ability of MIT to safely access the dock.

27. When MIT attempts to dock its ferry at the new extension, waves hit the existing "T" piling break wall, bounce back, and hit the boat in the opposite direction from the existing swells. This creates unsafe landing conditions as MIT's ferry is forcefully struck from multiple sides while loading and unloading passengers, placing them and their crew in danger.



Unprotected Extension Added by NPS to "T" Piling Break
Wall Depicted During a Light Breeze of 15 Knots

28. Due to the unsafe docking conditions presented to MIT's ferries, MIT was unable to conduct ferry operations to North Manitou Island during the 2024 season, other than a few trips when presented with near-perfect weather conditions.

29. In Fall 2024, MIT and NPS representatives met to discuss MIT's future access to the Islands.

**NPS Clearly and Without Qualification Repudiated the Terms of the Contract**

30. On October 24, 2024, the NPS stated a clear and unqualified refusal to render North Manitou Island accessible in 2025, and South Manitou Island accessible in 2026. Specifically, counsel for NPS notified MIT that the "NPS is now certain that all visitor activity at North Manitou Island will be closed for the year 2025," and that South Manitou Island will be closed "for at (sic) all of 2026."

31. The inability to regularly ferry passengers to the Islands during the 2024-2026 ferry seasons has thus far, and will considerably, reduce MIT's services, causing irreparable harm to the 100-year-old business.

8

32.     Due to the losses caused by NPS's breach of the Contract during the 2024 season, and clear and unqualified repudiation of the Contract on October 24, 2024, MIT has suffered substantial losses that will result in MIT going permanently out of business.

## COUNT ONE
### (Breach of Contract and Court Order)

33.     Plaintiff incorporates by reference the factual allegations set forth above as if they were fully repeated herein.

34.     Pursuant to the Contract and this Court's Order, NPS is required to maintain the Islands' docks "in a condition that ensures access by MIT's ferries for the duration of the seasonal operating schedule." *Manitou Island Transit, LLC*, 168 Fed. Cl. at 227.

35.     NPS did not appeal this Court's Order, therefore, under the doctrine of *res judicata* and settled principles of law, NPS is precluded from re-litigating the issue of its obligation to maintain the Islands' docks in a condition that ensures access by MIT's ferries for the duration of the operating schedule.

36.     Nevertheless, Defendant failed without excuse to perform its material obligations under the Contract regarding North Manitou Island for the 2024 ferry season, and otherwise act reasonably, to perform the maintenance to the Area that was required to enable MIT to perform its obligations under the Contract and obtain the benefits due thereunder. Such failures and contempt of this Court's Order by Defendant caused compensatory losses to MIT in addition to lost income and revenues from the Contract.

37.     As a direct and proximate result of Defendant's breach of the Contract and Court Order, MIT has suffered, and will continue to suffer, significant compensatory damages and losses to its ferry and related businesses, in an amount no less than $200,000, which will be proven at trial.

38. As of the date of this filing, the docks remain in a condition and under circumstances that threaten MIT's ability to perform in the 2025 season, thus threatening to cause irreparable harm to MIT, as this 100-year-old company will become insolvent and forced to liquidate if this breach is not enjoined.

## COUNT TWO
### (Breach of Contract and Court Order – Repudiation)

39. Plaintiff incorporates by reference the factual allegations set forth above as if they were fully repeated herein.

40. The Contract, effective as of March 15, 2019, extends both MIT's rights to ferry passengers to the Islands and NPS's duty to maintain the docks on the Islands in a condition that ensures access by MIT's ferries for the duration of the seasonal operating schedule, through March 15, 2029.

41. Pursuant to the Contract and this Court's Order, NPS is required to maintain the Islands' docks "in a condition that ensures access by MIT's ferries for the duration of the seasonal operating schedule." *Manitou Island Transit, LLC*, 168 Fed. Cl. at 227.

42. Under the doctrine of *res judicata* and settled principles of law, NPS is precluded from re-litigating the issue of its obligation to maintain the Islands' docks in a condition that ensures access by MIT's ferries for the duration of the operating schedule.

43. "Repudiation occurs when one party refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party." *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1344 (Fed. Cir. 2000).

44. NPS through its actions and statements, including their October 24, 2024, correspondence, has repudiated the Contract by stating a clear and unqualified refusal to render

North Manitou Island accessible to MIT in 2025, and South Manitou Island accessible to MIT in 2026.

45. As a direct and proximate result of Defendant's repudiation of its obligations under the Contract, MIT has suffered, and will continue to suffer, significant compensatory damages and losses to its ferry and related businesses, in an amount no less than $500,000, which will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Manitou Island Transit, LLC respectfully requests that JUDGMENT be entered by this Court in its favor, and against the United States of America:

1. Compelling NPS to perform under the Contract and remedy the continuing inaccessibility of the Islands;

2. Awarding MIT all of its compensatory damages, losses, costs, and other damages allowable under law, in the amount of $700,000.00, or such greater or lesser amount as may be proved at trial; and

3. Awarding MIT its attorneys' fees, costs, and all such other and further damages and relief based upon the proofs at trial and/or which this Court deems just and proper under the circumstances.

Dated:  February 6, 2025                    Respectfully submitted,

**THE FIERBERG NATIONAL LAW GROUP, PLLC**

/s/ Douglas E. Fierberg by s/Bailor Bell_____
Douglas E. Fierberg, Esq. – Attorney of Record
Bailor Bell, Esq. – Of Counsel
Counsel for MIT
201 East 17th Street, Suite A
Traverse City, MI  49684
dfierberg@tfnlgroup.com

bbell@tfnlgroup.com
Telephone: 231-933-0180
Facsimile: 231-252-8100